Good morning, ladies and gentlemen. This is a time set for argument in Parsons v. Ryan, a comeback case. You may proceed. May it please the Court, Timothy Berg of Fenimore Craig, on behalf of Defendant's Appellants. I will be addressing the issues in Case No. 18-16358, in particular whether the District Court can enforce a stipulation through its contempt power, and if so, whether it exercise that power properly. Mr. Asado will be addressing the other issues for rebuttal. We would like to reserve — sorry, the other issues on appeal we would like to reserve five minutes for rebuttal. Okay. Manage your own time. Okay. So we've already worn out one magistrate judge, and now we're on to Judge Silver, and then we're back with us. So how many more times do we get to see everyone? Hopefully, Your Honor, not many more times. This is my first time here in this case, so I don't have quite the sense of déjà vu that maybe you all have. The bottom line, at least with respect to this appeal, is that the stipulation that the parties entered into was an agreement. It was not a consent decree. It was not a court order. It was not incorporated into a court order. And therefore, contempt is not an option that's available to enforce it. It depends on whether or not the judge enters an order that makes it so, right? Your Honor, if this were a consent decree, if the judge had entered a consent decree, or if the judge had recited the provisions of the stipulation in his order approving it, or attached it to his order approving it, that would be absolutely correct. This would be an order, and it would be enforceable through contempt. But because it is simply an agreement of the parties, it is not enforceable through contempt. Well, the judge holds you in contempt unless you follow the order. I think you have to — well, first of all, Your Honor, there has to be an order for the judge to hold you in contempt with. That's why the order to show cause itself — His order to show cause is an order. But it has — an order to show cause has to rest on an underlying proper order. You can't — Now, wait a minute. Why do you say that? What is the case that says that you have to have an order under the order if you're trying to enforce the order of contempt? Well, because, Your Honor, you have to have an order to enforce in the first place. Why? Because the purpose of contempt is to enforce a court order. And I don't think the Court can bootstrap — And a court order can be an order to show cause. Because, Your Honor, the order to show cause is an enforcement mechanism for the stipulation, and the Court can't change the way that the law provides and the parties have agreed that the stipulation be enforced merely by the vehicle. So the stipulation, then, just basically means nothing? I mean, it's just this is what we agree to, and if it doesn't work out, then that's it? The Court can't do anything? No. It is — the Court definitely has enforcement ability. First of all, if the Court concludes that the parties aren't dealing with the stip — aren't complying with the stipulation, it can vacate the stipulation, and we can go back and litigate the case. Secondly, this Court has already found that Judge Duncan had certain things he could order under the stipulation. That's the Parsons — what we call the Parsons II appeal in the brief. What the — what Judge Duncan at one point talked about, tools he had and didn't have in his toolbox. And one of the tools you don't have in your toolbox as a court, if you don't have a valid underlying order to enforce, is contempt power. It simply is — the predicate for contempt is a valid court order you're enforcing. And in response to Judge Wallace's point, I don't think you can bootstrap an agreement and turn it into an order by using an order to show cause, which is really a method to enforce a prior order, to transmute that agreement into an order. It sets the idea of a private settlement agreement that's enforceable under contract law or by rescission on its head to say all that the judge has to do to change it into a consent decree or order is issue an order to show cause why you're not complying with it. So give us your best case. What's the best case you've got to prove that point? What's your best case? I think, Your Honor, if you look at Judge Bean's opinion from the Eighth Circuit and Christine A. That's your best case? That's our best case. Nothing from our circuit. Your Honor, there's nothing going the other way in your circuit, either. Good. We get to do it for free, don't we? Well, yes. You get to start all over. This is you're writing to a certain extent on a blank slate, but it's not a blank slate. Contempt, the law of contempt is long and large. And the basic principle is that because contempt is such a powerful power that courts have, courts have to keep that contempt power within its bounds, and they have to provide the appropriate procedures. And the way you keep it within a bounds is you make it limited to enforcing court orders. Right. But there are a series of court orders here. It's not just the one order that came out of nowhere. You have orders about noncompliance that go back quite a ways. So it's not just something that Judge Duncan pulled out of thin air. No. But what Judge Duncan is trying to do is to enforce the provisions of the stipulation, and he even says that, by using contempt. And his rationale wasn't that the stipulation was an order. His rationale said that the stipulation said he gets all remedies, I think it's allowed by law or provided by law, to enforce the stipulation, available at law. Sorry. And the problem with his analysis is that contempt is not a remedy available at law to enforce an agreement. So what remedy does he have to force the State to comply with the agreement? Well, he could let them sue for breach of contract. He could rescind the agreement and tell the parties, State, if you're not going to live up to your stipulation, then we're going to go to trial. We're going to continue litigating this case. You settled this case in the basis. You would do these things. If you can't or don't do these things, then the settlement goes away, and it — I suppose So I think we now have your best argument in mind on that. But so let's just — since we have a limited amount of time, I'd like to talk about the civil and the criminal on contempt. Absolutely. And I would like to hear your best argument that this is — what are the factors that make this a criminal contempt? It's a criminal contempt, one, because it's not compensatory. As the record establishes and as Judge Duncan recognized, the money — the amount of money awarded in sanctions here has nothing to do with the harm to the plaintiff. Plaintiff's put in no cash. So if it were compensatory, then we would have to have each incident what the loss was regarding each incident? You certainly, at least, Your Honor, would have to have some evidence of loss, and there's none here. I don't know that the Court needs to decide exactly whether you need it for each incident, or you can say for a certain class of incidents, this kind of loss is probably So we have — so we have coercive, compensatory, and fraudulent. punitive, right? So would you concede it's coercive? No, Your Honor. It's not coercive, because if it were coercive, then on the day Judge Duncan issued the contempt citation itself and set the amount, we would have the ability to purge it. And because he based it on failures in the past, we don't have the ability to purge it. And so it is a — it is a criminal contempt. And if you read his order and you look at what Judge Duncan said during the hearing, it is clear that he intended to punish the State for not — for its — for, in his view, its noncompliance with the order. And that makes it a criminal contempt, and we did not have the sort of safeguards, proof beyond a reasonable doubt, trial by jury, that you would have if this were a criminal contempt. So even if the Court concludes that Judge Duncan had contempt power to enforce it, he could not do it the way he did. It was my point that he didn't properly use his contempt power in this case. Well, punitive, obviously, if people go to jail, that's punitive, right? But here, what your — is the punitive — what's the best punitive argument here? The best punitive argument is we are being fined $1.4 million, Your Honor, and we have no way to purge that contempt after it was imposed. And that kind of fine is — is punitive, just as if he had said, I'm going to put — put Mr. Ryan in jail for a day to punish him. I mean, there's no difference between — in that sense, they're both punitive. Well, if he was going to put Mr. Ryan in jail, I think you — we — we — that makes it easier. No doubt. And — and Mr. Ryan might well prefer not to spend the day in jail and have this kind of contempt, but both of them are punishment, and both of them are criminal contempt. And in both cases, we should have had the ability to present our case to a jury, and the standard of proof should have been proof beyond a reasonable doubt. And we did — and — and the Court didn't provide those safeguards, which are — What would be our closest case where we would have something like this, where we're not talking about jail? Because I — I — I feel — I have concerns about whether it's — I have concerns in analyzing these, because I can look at them a couple of ways, but — Your Honor, I don't recall — I — I believe we cited cases in our brief, and I can't recall the name offhand. I'll try to get one for you before I come back up on rebuttal, where a fine was held to be criminal contempt. But I believe those cases are cited in our — in our opening brief and in our reply brief. Okay. Your time is running down. What else do you want to chat with us about? I will wait and come back on rebuttal and let Mr. Sato have his say. Okay. Thank you. Good morning. I'm Nicholas Sato. Unfortunately, this is my third time before you in this case. I want to talk briefly about the attorney's fees order. Because the parties agreed to end the underlying cause of action through a settlement, their rights and obligations are dictated by the terms of that agreement. Regarding attorney's fees, the baseline is zero. Plaintiffs are not entitled to any fees unless the stipulation says that they are, and even then, only to the extent that the agency authorizes them. The stipulation authorizes fees in only two circumstances. One, plaintiffs' counsel get fees for work performed to enforce or monitor the stipulation. And, two, under paragraph 43, if they file a motion to enforce and they prevail on that motion to enforce, they get fees that can be directly attributable to that prevailing motion. The district court ruled, and plaintiffs argue here, that if — if they file and prevail on a motion to enforce, they are able to recoup any and all fees for work performed prior to filing their motion, even if they had already exhausted the $250,000 cap. Because in their view, everything that they do is necessary and essential to enforcing the stipulation. That interpretation cannot be right for two reasons. One, it would effectively nullify the $250,000 cap on work performed to monitor and enforce the stipulation under paragraph 44. In other words, it would allow plaintiffs to recover more for monitoring and enforcing the stipulation than the stipulation authorizes under paragraph 44, under the guise of paragraph 43. It would also authorize fees and costs for work that did not prove successful. That would be a workaround paragraph 43's prevailing party requirement. The Court must construe the two paragraphs together and in harmony. And to preserve paragraph 44's cap on monitoring and enforcement work, paragraph 43 can only mean that they are entitled to fees and costs that can be directly attributed to filing the motion to enforce, which includes preparing the motion and the reply, and any subsequent related briefing, oral argument, or hearing. We're not saying that they're not entitled to any fees. They are. But only for fees that can be directly attributed to that motion. They cannot go back in time and recover for work that they did leading up to that motion. That all falls under paragraph 44. You made that objection before the district court? We did, Your Honor. And what did the district court — how did the district court turn it down? Well, the district court created a very broad rule. That's important to this case going forward. As you may not know this, but there's already been a second fees order and a second appeal challenging that order. But the court said this, quote, all these various activities described above are driven by plaintiff's attempts to enforce the stipulation. So in the district court's view, anything that they do, even monitoring, enforcement activities, call it what you want, but work that they do in enforcing the monitoring stipulation, that all can be bundled up. If you didn't get to claim it under paragraph 44, if you've exhausted the $250,000, you can just bootstrap that onto your paragraph 43 motion. And we're saying that that's an incorrect interpretation of the stipulation. So if you assume for the purpose of this question that the stipulation allows for an award of attorneys' fees, how did the district court err in determining the base hourly rate? For attorneys, well, there's a dispute as to what the source document is. It's our position that you've got to look to the Judicial Conferences Guide, Judiciary Guide, Section 230.116. So what do you think the hourly rate should be? Well, it depends on the year, but it's between $190 and $198 an hour, up to that amount. That's $150. Is that including the multiplier? No. That's not including the multiplier. And it's our position that the court did not have the authority to enhance the fee or multiply it in any way. That is not authorized by the stipulation. Again, you go back to the STIP. That's the baseline. It's zero fees unless it's expressly authorized. Nowhere does the stipulation authorize a multiplier. Nowhere does the stipulation incorporate Section 1988. A multiplier is a feature of 1988. And in fact, what the stipulation does is it shows that the parties agree to it. Does the Circuit case law allow for the multiplier? If this were a 1988 case, if this went to a jury with a verdict and a judgment, yes, under Kelly v. Wangler. But that didn't happen. We stopped short of that. This resulted in a settlement agreement, so that's what controls. We've cited a few cases. City of Pottinger, an Eleventh Circuit case. Ashker v. Cate is a district court case out of California. They've recognized that unless that stipulation or settlement agreement affirmatively authorizes a multiplier, the Court can't borrow 1988 principles. Well, you make a good argument about the Judicial Conference Guide, and it worried me when I read the briefs. What was the judge's rationale for not following your proposal that there are limitations set by the Judicial Conference Guide? The judge just went to the Court's decision in Webb, which just essentially set the general proposition that it's not the amount actually paid, it's the amount authorized. But if you look at Webb v. County of Ada, I believe, it doesn't tell you where you get that number. It doesn't say where you get that number. In fact, the cases that we've cited have applied Webb and Perez v. Cate, and they've concluded I think we've cited eight cases, six in California. Four of those cases cited Webb and Perez and said you've got to look to the Judiciary Guide. I'm below my time. I'd like to reserve the rest for rebuttal. Thank you. Good morning. Corrine Kendrick from the Prison Law Office for the Plaintiffs. In October 2014, the defendants in this case promised to provide constitutionally adequate health care to the 34,000 people incarcerated in Arizona's prisons. Their failure to meet that promise and their scorched-earth litigation strategy of contesting every effort by the district court to hold them accountable is why we are here with you yet again. The analysis of these three appeals is simple and boils down to a fundamental question about the power of the Federal judiciary. Does a district court have the power to ensure a party complies with a court-approved settlement agreement and court orders? The district court did not abuse its discretion when it issued the order to show cause, the civil contempt order, and sanctioned the defendants. The contempt order came after years of orders finding defendants substantially noncompliant, orders directing them to implement and develop remedial plans, defendants escalating disregard for the court's order. Would you concede this would be an easier question if this were a consent decree? Your Honor, the settlement agreement is the functional equivalent of a consent decree. Well, but it's not a consent decree, right? It's the functional equivalent. It's a court order that complies with all of the requirements of the Prison Litigation Reform Act. It incorporates the findings of the PLRA. And this Court rejected the argument that this is a private settlement agreement, because under the PLRA, private settlement agreements are only enforceable in State court. And when the panel issued its opinion in December, it did not say, get the State court. We can't rule. The court ruled on the orders that the district court had issued to enforce the orders. So you guys rejected that argument. Well, it's the stipulation itself says it's not a consent decree, right? Yes, it does. But it also includes all of the language from the PLRA. I mean, I think their best argument is that the parties agreed that it wasn't a consent decree. On the other hand, I think your argument would be, look, provided the district court could enforce it by all remedies necessary, and there were certain findings that would seem to comply with the statutory requirements for a consent decree. But in my view, it's hard to say it's one or the other. Just looking at the face. Well, it's a – again, it's a court-approved order that includes all of the elements from the PLRA, and this circuit has held in the Taylor case that it takes a functional approach to interpreting whether or not it's a consent decree or private settlement agreement. Stipulation is the label that defendants wanted to put on the document when we settled the case. What it's called does not necessarily determine what the force is and what the power is of the court. And this court held in December that the district court had the power to issue the enforcement orders for the outside providers and also had the power to issue an order for a staffing study. Right. So that leads me to my next question. Does it matter? No, it doesn't, sir. So if – let's talk about why we should construe this as a civil contempt order rather than a criminal. And I'm also curious if – what would be the consequences of considering the contempt order as criminal, and what would our options be if that were the case? Your Honor, the contempt order is civil because defendants were given the opportunity to purge, and they did purge. The order to show cause covered 11 performance measures at multiple prisons. It worked out to a combination of 29 measures and institutions. And the court told defendants, starting in December, because a month is the unit of measurement, you will be held in contempt of court for these if you're not at 85 percent. What happened is actually they did purge. They purged nine of those 29 measures. If you look at the contempt order, the court only issued sanctions for the performance measure and institution combination that had fallen below 85 percent. And that comports with what the panel held in December when it noted that the 85 percent requirement is what triggers judicial involvement, because defendants had previously argued that they only had to comply 80 percent of the time or 85 percent of the time. And what this Court said was, no, if you read the stipulation, what it means is if defendants are substantially noncompliant and get below 85 percent, which is the current trigger, the court's words, this panel's words were, it triggers judicial involvement. And so that's what happened with these measures, starting in December, and then the next month was January. And so there were some measures where they did actually purge. So that's why it's coercive. So it is coercive. I agree with you on that. But I'm having a hard time between, I mean, I can make arguments why something could be coercive and why it could be compensatory, but why it's not, because, I mean, I don't even know that if you would go with every violation, what was the actual amount of money. But it doesn't appear, it looks like they took a flat amount per, and some probably, wouldn't it be $1,000? Maybe some would be more. I don't know. And certainly, I could make an argument that it was punitive, too. So how do I say? Yes, ma'am. So you can actually affirm, find it civil either because it's coercive or because it's compensatory. And here's how it's compensatory. It compensates the plaintiffs as a class. This is a class action. And so there's no requirement that compensatory contempt be only money. For example, in Kelly v. Wengler, the district court found the defendant in civil contempt and then issued a compensatory sanction of extending the time frame of the consent decree. So what we argue is if the court feels it's not coercive, it can then look at the compensatory analysis and see that it was designed to benefit the plaintiffs as a class. That's what the court's order when the court also issued an order asking the parties to submit plans for how they were going to, you know, for the use of the funds. And both parties submitted proposals that would benefit the plaintiffs as a class. So at some point, does money become punitive? If it had gone on for years and years and years, but it didn't. Because it's over $1 million, right? Yes, it is. Okay. So if it were $5 million, would that be punitive? I don't think this circuit has ever been. If it were $100 million, would it be punitive? Well, Your Honor, in Bagwell, the Supreme Court held that $52 million was converted from punitive. The circuit hasn't, you know, had any opinion where it's set the price tag as to when it crosses the line. So the Supreme Court has said $52 million is too much. We're at $1 million. Okay. Could I ask you a question about the fees? Yes, sir. I was interested in reading our recent case of United States v. Perez, which seems to outline pretty carefully what should be done in this case. And if Perez is correct, which we—it governs us, it would seem that there is some way in which the district court seemed to overlook the judicial conference of the United States guidelines. And I'm having trouble with accepting the length of the—or the amount of the fees because of the failure of the district court to observe that. So why don't you tell me why that—the district court was right in doing so? Yes, sir. The district court was correct because it relied upon Webb and Perez that say it's the authorized rate. So it was following the Ninth Circuit precedent there. How is it following the Ninth Circuit precedent when it didn't follow the judicial conference of the United States guidelines? No. The stipulation, paragraph 43, says that the rate of section 1997ED, which is 150 percent of the hourly rate, the maximum authorized by the judicial counsel. I understand that. But is your position that the district court did not—did not commit error by failing to—by going over the judicial conference guideline amount? No. It used the authorized amount. It did? Yes, sir. And I'd like to say something else about the fees. Defendants are trying to muddy the water with the distinctions between paragraphs 43 and 44. They're saying that you cap at 250, and this is a workaround. No. Well, first of all, the first problem is this argument is waived. Defendants did not raise that in the district court briefing on this —this order. They did not argue it in their opening brief. The first time they mentioned it was in their reply brief. Mentioned what? Mentioned that —made their argument that the language in paragraph 44 that caps monitor or enforce somehow controls everything. And they also disregard the fact that the last sentence of paragraph 44 specifically says the caps shall not apply to any work performed before the district court to enforce or defend the stipulation. And so the last sentence of paragraph 44 with paragraph 43 obviously show that the parties did plan to allow attorneys' fees for enforcing the stipulation. But if —if —do you concede that the amount awarded by the district court was above the guidance of the judicial conference? Our position is that he —he followed the —the case precedent. I don't think that answers my question. Well, I guess, Your Honor, if —if the panel does feel that it was calculated wrong, then you remand it to the district court and tell the district court to recalculate it with the rate that the panel feels is the correct rate. Okay. That's very straightforward. So the issue is whether or not we believe the judicial conference guidelines apply. If they do apply, then it goes back for recalculation. If they don't apply, we can affirm it, right? Correct. That's settled. Thank you for the clarification. Thank you. Okay. So the other appeal that is at issue here is the omnibus appeal that rolls ten disparate orders into one omnibus. Our position is that eight of the appeals are non-appealable orders, the ones relating to the experts, because those are all clearly procedural orders that envisioned future action by the district court. So we think that that part should be vacated. So when would they be able to? You're talking Dr. Stern and the other doctor that I can't pronounce the name of that Dr. Stern asked to help. Yes. So there's those and then also the advisory board. So the time when they can appeal is when the court orders them to implement the recommendations of the expert. And that didn't happen with the first expert, the advisory board. All the court asked them to do was to submit a plan to implement the recommendations. They submitted a two-page cursory plan. The district court took no further actions, and as we argue, those orders are moot in addition to being unappealable because they related to their previous health care vendor, Khorizan, and Khorizan no longer provides health care as of July 1st. With the other orders, you know, those are setting out the scope of the work that Dr. Stern and Dr. Aplam-Plant are going to do and the rate they're going to pay them. And again, those are not appealable orders. Plata v. Schwarzenegger, this court held that it's not appealable when there is an So let's get to the two orders you think are final. Okay. So the termination, the order on the termination motion, we believe it was not an abuse of discretion. The court relied upon Ninth Circuit precedent of PAMA band for the legal basis for it, and the factual record amply supported the holdings. And again, the order on the H&R boxes telling them to restart a process, that until a few months earlier, they had been using, again, was amply based on the factual record. Defendants make blanket objections to these orders saying the facts weren't there, but they don't specify which facts it is exactly that they think that the court didn't rely on. About the Rule 60, Rule 60 order. The Rule 60. Yeah. The order denying Rule 60 motions for relief. That, our position is it's been waived because defendants didn't even address it in their opening brief. So one other thing I wanted to discuss with you was in the stay order that this Court issued, you asked that the parties address the stay in the supersedis bond issue. So as we noted in our January opposition to the stay motion, the automatic stay provisions of Rule 62 do not apply to contempt fines, because a contempt fine is not equivalent to a supersedis bond. And it would destroy the purpose of contempt if of contempt sanctions if we take the position that depositing the fine somehow then ties the court's hands. And we pointed to two northern district cases that came to this conclusion in Stone v. City and County of San Francisco, the northern district said civil contempt fees should be thought of as more akin to injunctive relief than monetary damages. And with regard to the supersedis bond for the attorney's fees, Rule 62 and Masto make it clear there's no automatic stay. And while we admit that ADC, the State of Arizona, obviously has the capability to pay the attorney's fees, their own declarant said that a legislative appropriation may be necessary. And their past behavior in the Hook case, when defendants refused to pay the special master in another prison reform case, also would call into question whether or not they'll pay the attorney's fees, even if the fees judgment is affirmed on appeal. So did I mishear or that they said there's already another appeal in the works? Yes, ma'am. It's not called Parsons v. Ryan, though. They've appealed it, I believe. They call it Jensen v. Ryan, a different name plaintiff. But it's attorney's fees on this case? Yes, ma'am. Okay. So I heard it correctly. Okay. But we're asking the Court to immediately lift the stay on the disbursement of the contempt fines so that the district court can order the money to be used in a measure to best benefit the plaintiff class. Why would we issue the order? The district court has power to do whatever he decides to do with it. No, but the stay motion, you stayed the judgment of contempt. So she can't issue any further orders as to how to spend the money until y'all lift the stay on the contempt judgment. Yeah. Well, the stay was to wait until we got it up here. But all you're suggesting is that with our order, we should lift the stay. So that she can go ahead. With our decision. Yes, sir. Yes, sir. In November, Judge Silver denied defendants' motion to reconsider and stay many of the orders that are at issue today. And she wrote that it was ill-conceived and ill-advised for defendants to continue to use taxpayer money defending their non-compliance with the stipulation instead of focusing their efforts on remedying the cause of non-compliance. And so we believe the Court should find the same. I'd like to reserve the remainder of my time. You don't have a cross-appeal? They do have a cross-appeal. All right. Very good. May it please the Court, Timothy Berg. Judge Callahan asked for some authorities with respect to the idea that monetary sanctions could be punitive. Obviously, as she discussed with counsel for the other side, the Bagwell case is a criminal contempt case, which involves a sum of money. If you go to page 43 of our opening brief, we cite the Hicks case and the Shell Offshore Inc. case for the proposition that when you pay money into the court rather than to the parties, that's an indication of criminal contempt also. What this really comes down to, I think, is two questions. Did the cases say that? I thought, what was the, in the order that the judge sequestered the funding in the court, what did he say the reason for paying the money was? The judge took the position, in this case you're talking about, Your Honor, the judge took the position that it was coercive contempt. It's our position that it wasn't because we weren't given an opportunity to purge after the sanction was imposed and because it was intended to punish. Now, that's not what Judge Duncan said he was doing, but we believe that's what he was, in fact, doing, Your Honor. Okay. I was asking, what did he say he was doing? What he said was he didn't he actually didn't say it was compensatory. What he said was that this was a coercive contempt, that he was intending to, by essentially by punishing us, to force us to do what he wanted us to do, but he didn't. I thought he put it in there for the use of the class. Your Honor, what I believe, the court has not yet decided what to do with the money. I would suggest to you that it cannot be compensatory contempt without proof by the plaintiffs that they've suffered an amount of damages and without a relation between that amount of damages and the compensation. You can't take a, say we picked a billion dollars out of thin air, you can't make that compensatory by saying, and I'm going to use this billion dollars for the benefit of the class. It has to have relationship to the injury the plaintiff suffered in order to be compensatory. But it's not a billion dollars. I mean, there were like, what, 1,400 or some, I don't know, some hundred, and then reduced and all of that. So it's 1,000 bucks a violation, right? So that's not a billion dollars. So no, it's not, Your Honor, but it is still punitive. It's not related to any loss, so it's not compensatory, and it is the way in which the court did it makes it criminal instead of punitive. And he was clear he was punishing us for what we hadn't done in the past. All of that makes it a criminal contempt. I think the other side said that you had, that there was time to purge certain things. It didn't immediately go into effect, and there were certain things that were corrected. Do you want to address that? Yes, Your Honor, I do. What the other side misses, I think, or misunderstands is the difference between the order to show cause and the sanctions order itself. For this to be properly a coercive civil contempt, we have to have the opportunity to purge not after the order to show cause, but after the sanctions order itself is imposed. And there's language to that effect in Bagwell that just because you announce it ahead of time, it doesn't turn a criminal contempt sanction into a civil contempt sanction. A civil contempt sanction that is coercive says something like, Mr. Berg, we're going to make you pay $1,000 a day until you stop doing this. And that is a coercive civil contempt, because I have the ability to stop doing it after the order is issued and purge myself of the contempt. That's the whole idea of a civil contempt. Where the court says, I'm fining you this much for three months of bad behavior, that's a criminal contempt. It's not a civil contempt. And we're entitled to a jury trial, and we're entitled to due process. Again, the court, in a sense, sets beside the point because the court didn't have the ability to enforce the stipulation by contempt. Mrs. Kendrick says we're relying on just the label stipulation. No, we're not. We're relying on the language of the stipulation which says this is not a consent decree. And which says the judge can enforce it with all remedies available at law. Contempt is not a remedy available at law to enforce a settlement agreement or a stipulation. It is available to enforce an order. Judge Duncan may have had other tools in his toolbox, but contempt wasn't the appropriate one. We asked the court to vacate this order and reverse the judgments in this case and remand for further proceedings. Thank you. Roberts. Thank you, counsel. We'll hear rebuttal on the cross-appeal. Thank you. So just to be clear, we do not admit that there was error in the fees award, except for the fact that the court the district court improperly failed to award plaintiff's fees for the law clerks. Well, apparently the district court knew that it could have given you fees for law clerks, but chose not to. Now, if the district court had said, well, no, there's no authority for me to give you any relief for the any money for the law clerks or for the overhead, but the district court didn't say that. The district court said, basically, I'm not going to give it to you. And why can't the district court exercise its discretion that way, just like the district court exercised its discretion to pick an amount and do a multiplier? Well, we believe that it should have followed the district court should have followed the law, the controlling law that says it is compensatory. But it's not mandatory compensatory, is it? I mean, the district court didn't make it. Did the district court make an error of law and say, there's no authority for me to give you money for the law clerks? I don't think so. Okay. That's, am I wrong? No, Your Honor, you're not wrong. I mean, what we're saying is that the district court needed to award it under the Supreme Court precedent. Okay. Thank you. Thank you. Thank you both for your argument today, and very helpful to the Court, and we will be in recess. All rise.
judges: Thomas, Wallace, Callahan